IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

MICHAEL C. AUGUSTINI (DC BAR NO. 452526)
michael.augustini@usdoj.gov
MEREDITH WEINBERG (VA BAR NO. 47516)
meredith.weinberg@usdoj.gov
MARTHA C. MANN (FL BAR NO. 155950)
martha.mann@usdoj.gov
ADAM J. KATZ (DC BAR NO. 502776)
adam.katz@usdoj.gov
Environmental Defense Section
U.S. Department of Justice
P.O. Box 23986
Washington, DC 20026-3986
(202) 616-6519
FAX: (202) 514-8865

Attorneys for Defendant United States of America

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. CV-09-1734 AHM (RZx)<br><br>**UNITED STATES' RESPONSE TO AISLIC'S OBJECTIONS TO THE TESTIMONY OF U.S. EXPERT MATTHEW LOW**<br><br>Trial: February 23, 2010<br>Time: 9:00 AM<br>Location: Courtroom 14 |

1

**UNITED STATES' RESPONSE TO AISLIC'S OBJECTIONS TO MATTHEW LOW**

Up until a few days ago, Plaintiff American International Specialty Insurance Company ("AISLIC") has taken the position throughout this case that allocation of response costs is a proper subject for expert testimony, submitting two Rule 26 reports from Robert M. Zoch covering allocation issues -- one in June 2009 regarding perchlorate and another in November 2009 regarding the remaining alleged contaminants. In response, the United States retained Matthew Low to rebut Mr. Zoch's flawed opinions and to offer for consideration by the Court a proposed allocation framework that draws from Mr. Low's substantial CERCLA experience and properly reflects the relevant facts in this case.

It was only after both Mr. Zoch and Mr. Low were deposed that AISLIC changed course and determined that it was better off if the Court did not weigh the credibility of the parties' respective experts' allocation opinions after hearing their live testimony at trial. Thus, AISLIC now objects to such testimony on the grounds that it invades the province of the Court to exercise its own equitable discretion to allocation costs and is not reliable. The Court should reject AISLIC's gamesmanship on this issue. Mr. Low's substantial experience will aid the Court in its determination of an equitable allocation of response costs under CERCLA § 113(f) (assuming it is necessary to reach this issue). Many courts and settling parties have accepted his allocation analyses. Considering that AISLIC is seeking more than $200 million in costs from the United States, and that Mr. Low's testimony is not expected to exceed two hours, the United States respectfully submits that AISLIC's objection should be overruled.

## LEGAL STANDARDS

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 imposes a "gatekeeping" duty on the court to ensure that testimony based on scientific, technical or other specialized knowledge rests on a reliable

2

**UNITED STATES' RESPONSE TO AISLIC'S OBJECTIONS TO MATTHEW LOW**

foundation and is relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). However, "far from requiring trial judges to mechanically apply the Daubert factors" the trial court has broad discretion to determine not only whether to admit expert testimony but also how to test an expert's reliability. *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. Cal. 2000). In a bench trial, courts have even greater discretion to relax scrutiny of expert testimony. *Flores v. Arizona*, 516 F.3d 1140, 1166 (9th Cir. 2008). A court may admit the challenged evidence subject to the ability to later exclude or disregard it if it does not meet the standards established by Rule 702. *In re Salem,* 465 F.3d 767,777 (7th Cir. 2006); *United States v. Brown*, 415 F.3d 1257,1268-69 (11th Cir. 2005). Similarly, courts have greater flexibility to consider expert opinions that reflect legal conclusions in a bench trial. *See Autoskill, Inc. v. Nat'l Educ. Support Sys*., 994 F.2d 1476, 1493 (10th Cir. 1993) (discretion to admit expert testimony including legal conclusions where such testimony was "helpful" and the legal conclusions "were not binding"); *Martin v. Ind. Mich. Power Co*., 292 F. Supp. 2d 947, 959 (W.D. Mich. 2002) (dangers that legal expert testimony presents are "minimal if not nonexistent" in bench trial).

## ARGUMENT

### I.     Mr. Low qualifies as an expert under Rule 702.

AISLIC asks the Court to disregard Mr. Low's greater than thirty years of experience as an environmental consultant and CERCLA cost allocation expert, and appears to argue that only experts with credentials "in geology, hydrogeology or any of the other scientific disciplines" are worth the time of the Court. AISLIC Objections to Matthew Low ("Pltf. Objections") at 1. AISLIC's own allocation expert, Mr. Zoch, has no such credentials and presumably AISLIC deemed Mr. Zoch qualified when it retained him to submit two Rule 26 allocation reports.

3

In addition, AISLIC's narrow characterization of the kind of expert that may be useful to a court does not match up to the "broadly phrased" definition of an expert adopted in Rule 702.  *Thomas v. Newton Int'l Enters*., 42 F.3d 1266, 1269-1270 (9th Cir. Cal. 1994) ("Rule 702 is…intended to embrace more than a narrow definition of qualified expert.").  Mr. Low has an engineering degree and over 30 years of professional experience in environmental compliance, management and enforcement, risk assessment, arbitration, mediation, dispute resolution, and policy analysis. He is experienced in development of environmental management systems and conducting due diligence investigations, and was the branch chief at the United States Environmental Protection Agency's Office of Enforcement and Policy as well as the Policy Director for the National Commission on Air Quality.  He personally has worked on over 100 CERCLA cases.  *See* Mr. Low's Declaration In Lieu Of Direct Testimony, Doc. 97-6, at p. 44, for a copy of his resume ("Low Declaration").  Accordingly, Mr. Low is qualified and it is within the Court's discretion to consider whether Mr. Low's demonstrated expertise in formulating large quantities of technical data into frameworks for the allocation of costs consistent with CERCLA principles will be useful to the Court.

## II. Mr. Low's expert testimony is reliable.

### A. It is based on generally accepted methodology and a site-specific factual basis.

Mr. Low relies on the language of CERCLA, legislative history, and case law as the foundation for his allocation methodology.  He specifically uses the "Gore factors," among other equitable factors, as a guide to his analysis.  This methodology is generally accepted by courts, arbitrators, and mediators.[1]  Indeed,

---

[1] In its Objections, AISLIC confuses the issue of reliability with that of relevance.  Mr. Low considers factors that are frequently applied in CERCLA cases and that may be used by lawyers in briefing the court—a methodology AISLIC recognizes

Mr. Low relies on the same general methodology, with necessary tailoring to reflect each specific factual situation, whether he is serving as an expert, mediator, or environmental consultant.

Mr. Low further bases his opinions on an in-depth examination of the facts of the case as set forth in original documents, depositions, and expert reports. *See* Low Declaration, Attachment 1. Each hazardous waste site is distinct in the nature and source of its contamination, as well as in the extent to which information relevant to allocation may be available in the record. Here, Mr. Low has examined site-specific factual information to determine which of a number of potential metrics best fit the character of the Whittaker-Bermite Site. The Court is not being asked to accept Mr. Low's conclusions *ipse dixit*; Mr. Low's reasoning is presented openly such that the Court may evaluate his opinions on the merits. In his expert reports, he sets forth clearly the equitable factors he considered most relevant to the site, and the calculations and assumptions underlying those determinations. He also describes his reasoning for weighting certain factors more or less heavily by reference to the facts at the Site. Mr. Low further identifies explicitly where he is relying on information from or the conclusions by other experts. Even the *Westwood-Squibb* Court, which opted not to hear Mr. Low's testimony, concluded Low "took great care to ground his analysis in objective fact," that his "analysis of the site's history and operations seems rational and considered," and that Low "supports his reading of the record by citing and discussing specific examples and drawing on decades of experience in CERCLA

---

as valid. Pltf. Objections at 4 ("This is a subject for argument by lawyers."). The fact the Mr. Low uses a methodology similar to that adopted by courts does not make his methodology unreliable. To the contrary, it indicates his methodology is "generally accepted," one of the *Daubert* factors. The question of relevance of the methodology is addressed *infra*.

5

**UNITED STATES' RESPONSE TO AISLIC'S OBJECTIONS TO MATTHEW LOW**

allocations." *State of New York v. Westwood-Squibb Pharmaceuticals, Inc.*, 2001 U.S. Dist. LEXIS 11765 (2001).[2]

Mr. Low's analysis is transparent and properly reflects the specific facts that have been developed regarding Whittaker-Bermite Site, and thus unquestionably meets Rule 702 requirements for reliability. *See Bragdon v. Abott*, 524 U.S. 624, 653 (1998) (expert testimony is reliable where it has "a traceable, analytical basis in objective fact"). AISLIC is simply incorrect that the additional *Daubert* factors are useful or necessary to evaluate Mr. Low's methodology. As one court stated, "Because environmental contamination cases present unique issues of causation, the court is not concerned that [the cost allocation expert's] theory has not been tested, published or subject to peer review." *Raytheon Aircraft Co. v. United States*, 2008 U.S. Dist. LEXIS 17201 (D. Kan. Mar. 4, 2008) (expert held reliable).

### B. The Court need not agree with Mr. Low's ultimate conclusions to find his methodology reliable.

In addition to presenting an analytic framework for CERCLA allocation at the Whittaker-Bermite site, Mr. Low presents figures that represent his reasoned opinion of an equitable allocation between the parties. Mr. Low himself recognizes that, "decisions on which allocation factors to apply and how to apply them are within the province of the Court." Low Declaration at 6. The Court ultimately may accept or disagree with Mr. Low's conclusions. The focus of a reliability assessment under Rule 702, however, "must be solely on the principles

---

[2] *Westwood-Squibb* is distinguishable in that Mr. Low's allocation analysis here is framed around the unique facts pertaining the Whittaker-Bermite Site. That case is also of limited value because the same court more recently held -- after considering other CERCLA decisions -- that the "proper approach" was to permit CERCLA allocation experts to testify at trial and be subject to cross-examination, given the substantial flexibility that courts have to conduct CERCLA bench trials. *See New York v. Solvent Chem. Co.*, 2006 WL 2640647, at *2 (W.D. N.Y. Sept., 14, 2006).

**UNITED STATES' RESPONSE TO AISLIC'S OBJECTIONS TO MATTHEW LOW**

and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 594-95. *See also*, *Raytheon Aircraft Co. v. United States*, 2008 U.S. Dist. LEXIS 17201 (D. Kan. Mar. 4, 2008) (noting the court may not ultimately agree with the allocation expert's approach, but admitting the expert opinion as reliable). AISLIC already has taken Mr. Low's deposition and will have an adequate opportunity to cross-examine him at trial in an effort to uncover any weaknesses or flaws in his opinions. The Court, as factfinder, may then assess Mr. Low's and Mr. Zoch's credibility and give each expert's testimony the weight it sees fit.

### III. Mr. Low's testimony is relevant and will assist the Court as the trier of fact.

Numerous federal courts have admitted the testimony of allocation experts and used them as an aid in allocating liability among PRPs under CERLCA. *See e.g.*, *Goodrich Corp. v. Town of Middlesbury*, 311 F.3d 154, 162 (2d Cir. 2002) (evaluating the opinions of CERCLA allocation experts in its review of an allocation finding); *United States v. Kramer*, 644 F. Supp. 2d 479, 494 (D.N.J. 2008) (testimony of a CERCLA allocation expert "might illuminate court's consideration of equitable factors" but is not necessary to survive motion for summary judgment); *Action Mfg. Co. v. Simon Wrecking Co.*, 428 F. Supp. 2d 288, 314 (E.D. Pa. 2006) (admitting allocation expert testimony); *City of Wichita v. Trs. of the Apco Oil Corp. Liquidating Trust*, 306 F. Supp. 2d 1040, 1111 (D. Kan. 2003) (same); *Ekotek Site PRP Comm. v. Self*, 1 F. Supp. 2d 1282, 1294 (D. Utah 1998)(same); *Browning-Ferris Indus. of Ill., Inc. v. Ter Maat*, 13 F. Supp. 2d 756, 778 (N.D. Ill. 1998) (same). Although AISLIC argues courts have been more willing to admit allocation opinions where they are limited to factual matters such as the relative volume contribution of each party to the stream of hazardous substances, Pltf. Objections at 3, the allocation expert testimony admitted in the

above cases was of a far broader scope. *See, e.g., Goodrich Corp.*, 311 F.3d at 162 (experts presented recommended cost allocation formulas, including one developed by a neutral consultant, incorporating multiple factors).  Moreover, Mr. Low's allocation reports incorporate a volumetric analysis as part of assessing the relative degree of involvement of Whittaker and the United States at various locations where contamination is found at the Site.

     AISLIC argues Mr. Low's testimony should be excluded because he provides an opinion as to an ultimate issue of law, and cannot therefore serve as an aid to the Court as factfinder.  The United States disputes the characterization of Mr. Low's testimony as forming a legal conclusion. While Mr. Low relies on legal analysis that mirrors that used by a court, his testimony does not interfere with the Court's responsibility to reach findings of fact and conclusions of law.  Mr. Low may aid the Court by offering a framework for analysis which the Court is free to adopt or reject.  In this framework, Mr. Low presents documented facts related to contamination at the site in a light that may be helpful to the Court in organizing its own equitable analysis.  This service of providing context to the facts in the record is a traditional role of many experts.

     Second, AISLIC's position fails to take into consideration that each party has the opportunity to present its own understanding of the best allocation framework.  Indeed, AISLIC's expert, Dr. Zoch, has offered his own cost allocation opinions.  By admitting experts on cost allocation, courts have the benefit of examining and weighing the merits of opposing allocation frameworks.  Far from being manipulated into directly adopting an expert's proffered views on allocation as a jury might, courts have shown themselves adept at adopting only the portions of the allocation experts' opinions that they find persuasive. *See e.g., Action Mfg. Co*, 428 F. Supp. 2d at 314 (adopting one party's CERCLA allocation

expert's approach and incorporating opposing allocation expert's objections to calculate equitable shares); *City of Wichita*, 306 F. Supp. 2d at 1111 (D. Kan. 2003) (comparing experts' models and using a CERCLA allocation expert's opinion in determining which to use among them); *Gould, Inc. v. A & M Battery & Tire Serv.*, 987 F. Supp. 353, 364 (M.D. Pa. 1997) (examining each allocation expert's opinion and selecting a combination of both methodologies).  Moreover, these different allocation frameworks are best presented and compared through direct and cross examination at trial.  It is exactly this kind of direct comparison of opposing allocation frameworks that is most helpful to courts in making the ultimate determination on CERCLA cost allocation.

**IV.   Conclusion**

For the above reasons, the United States respectfully requests that the Court overrule AISLIC's objections and allow Mr. Low to testify at trial.  The Court ultimately has the discretion to determine what weight to give his testimony, following AISLIC's cross-examination, and re-direct.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General

Dated:   February 21, 2010          */s/ Meredith Weinberg*
MICHAEL C. AUGUSTINI
MEREDITH WEINBERG
MARTHA C. MANN
ADAM J. KATZ

Attorneys for Defendant United States

**UNITED STATES' RESPONSE TO AISLIC'S OBJECTIONS TO MATTHEW LOW**