IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

MICHAEL C. AUGUSTINI (DC BAR NO. 452526)
michael.augustini@usdoj.gov
MEREDITH WEINBERG (VA BAR NO. 47516)
meredith.weinberg@usdoj.gov
MARTHA C. MANN (FL BAR NO. 155950)
martha.mann@usdoj.gov
ADAM J. KATZ (DC BAR NO. 502776)
adam.katz@usdoj.gov
Environmental Defense Section
U.S. Department of Justice
P.O. Box 23986
Washington, DC 20026-3986
(202) 616-6519
FAX: (202) 514-8865

Attorneys for Defendant United States of America

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. CV-09-1734 AHM (RZx) <br><br> **DEFENDANT UNITED STATES OF AMERICA'S OPPOSITION TO AISLIC'S MOTION IN LIMINE** <br><br> Judge: A. Howard Matz <br> Hearing: February 7, 2011 <br> Time: 10:00 AM <br> Location: Courtroom 14 |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 2

LEGAL STANDARDS ............................................................................................ 3

ARGUMENT ........................................................................................................... 4

I.      MR. LOW'S ALLOCATION OPINIONS ARE ADMISSABLE ............... 4

        A.      Mr. Low qualifies as an expert under Rule 702 ............................... 5

        B.      Mr. Low's expert testimony is reliable ........................................... 6

                1.      Mr. Low's testimony is based on generally accepted
                        methodology and incorporates a site-specific factual basis ....... 6

                2.      The Court need not agree with Mr. Low's ultimate conclusions
                        to find his methodology reliable ................................................ 8

        C.      Mr. Low's testimony is relevant and will assist the Court ............... 9

II.     DR. MCLANE'S OPINIONS ARE ADMISSIBLE ................................... 11

        A.      Dr. McLane qualifies as an expert under Rule 702 .......................... 11

        B.      Dr. McLane's opinions are otherwise admissible ............................ 14

III.    MR. BAUER'S OPINIONS ARE ADMISSIBLE ...................................... 16

        A.      Mr. Bauer qualifies as an expert under Rule 702 ............................ 16

        B.      Mr. Bauer's testimony is highly relevant and will assist the Court. 18

IV.     THE COURT OVERRULED AISLIC'S "OMNIBUS" HEARSAY
        OBJECTION TO THE ADMISSION OF THE UNITED STATES'
        EXPERT REPORTS ................................................................................... 19

V.      CONCLUSION ........................................................................................... 21

UNITED STATES' OPPOSITION TO AISLIC'S MOTION IN LIMINE

1

# **TABLE OF AUTHORITIES**

2

3  CASES                                                                    PAGE

4  Action Mfg. Co. v. Simon Wrecking Co.,
5      428 F. Supp. 2d 288 (E.D. Pa. 2006)........................................ 9, 10

6  Autoskill, Inc. v. Nat'l Educ. Support Sys.,
7      994 F.2d 1476 (10th Cir. 1993) ............................................... 4, 14

8  Bragdon v. Abott,
9      524 U.S. 624 (1998).............................................................. 8

10 Browning-Ferris Indus. of Ill., Inc. v. Ter Maat,
11     13 F. Supp. 2d 756 (N.D. Ill. 1998)........................................ 10

12 City of Wichita v. Trs. of the Apco Oil Corp. Liquidating Trust,
13     306 F. Supp. 2d 1040 (D. Kan. 2003) .................................... 9, 10

14 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
15     509 U.S. 579 (1993).............................................................. 3

16 Davis v. Mason County,
17     927 F.2d 1473 (9th Cir. 1991) ............................................... 9

18 Ekotek Site PRP Comm. v. Self,
19     1 F. Supp. 2d 1282 (D. Utah 1998) .......................................  10

20 Goodrich Corp. v. Town of Middlesbury,
21     311 F.3d 154 (2d Cir. 2002) .................................................  9, 10

22 In re Salem,
23     465 F.3d 767 (7th Cir. 2006) ................................................ 4

24 Irise v. Axure Software Solutions, Inc., CV 08-03601 SJO (JWJx),
25     2009 WL 3615075 (C.D. Cal. Sep. 11, 2009) .......................... 20

26 Kumho Tire Co. v. Carmichael,
27     526 U.S. 137 (1999)............................................................. 3

UNITED STATES' OPPOSITION TO AISLIC'S MOTION IN LIMINE

Levin v. Dalva Bros., Inc.,
    459 F.3d 68 (1st Cir. 2006)................................................................... 12

Ling Nan Zheng v. Liberty Apparel Co.,
    556 F.Supp. 2d 284 (S.D. N.Y. 2008) ............................................... 18

Martin v. Ind. Mich. Power Co.,
    292 F. Supp. 2d 947 (W.D. Mich. 2002)............................................ 4

McCullock v. H.S. Fuller Co.,
    619 F.3d 1038 (2d Cir. 1995) ...................................................... 5, 12

Metavante Corp. v. Emigrant Savings Bank,
    619 F.3d 748 (7th Cir. 2010) ............................................................. 13

Miksis v. Howard,
    106 F.3d 754 (7th Cir. 1997) ............................................................. 9

New York v. Solvent Chem. Co., No. 83-CV-1401C,
    2006 WL 2640647 (W.D. N.Y. Sept., 14, 2006)............................ 8

New York v. Solvent Chem. Co.,
    685 F. Supp. 2d 357 (W.D. N.Y. 2010)....................................... 6,10

New York v. Westwood-Squibb Pharmaceuticals, Inc., Civ. No. 90-CV-1324,
    2001 U.S. Dist. LEXIS 11765 (W.D. N.Y. June 23, 2001) .......... 8

Raytheon Aircraft Co. v. United States, Civ. No. 05-2328-JWL,
    2008 WL 627488 (D. Kan. Mar. 4, 2008)..................................... 6, 9

Thomas v. Newton Int'l Enters.,
    42 F.3d 1266 (9th Cir. 1994) ............................................................. 5

United States v. Brown,
    415 F.3d 1257 (11th Cir. 2005) ......................................................... 4

United States v. Hankey,
    203 F.3d 1160 (9th Cir. 2000) ........................................................... 3

iv

United States v. Kramer,
      644 F. Supp. 2d 479 (D.N.J. 2008)................................................................ 9

Vucinich v. Paine, Webber, Jackson & Curtis, Inc.,
      803 F.2d 454 (9th Cir. 1986) ...................................................................... 18

MISCELLANEOUS

David F. Herr, Annotated Manual for Complex Litigation § 34.31 (4th ed. May
2010) .......................................................................................................................... 5

UNITED STATES' OPPOSITION TO AISLIC'S MOTION IN LIMINE

1

# **INTRODUCTION**

2    Plaintiff American International Specialty Lines Insurance Company

3    ("AISLIC") has renewed its evidentiary challenges to the written, direct testimony

4    offered by three expert witnesses -- Matthew Low, David Bauer, and Charles

5    McLane -- that the United States designated in connection with the Phase II trial.[1]

6    Because these witnesses are eminently qualified to serve as experts in their

7    respective disciplines, their testimony satisfies Rule 702's liberal standards for

8    admissibility.  All of the opinions offered by Mr. Low, Mr. Bauer, and Dr. McLane

9    are highly relevant, supported by abundant factual material, and non-cumulative.

10    Accordingly, the Court should reject AISLIC's meritless exclusion arguments.

11    This is a complex CERCLA case encompassing more than four decades of

12    industrial operations at the Whittaker-Bermite Site, and AISLIC is seeking over

13    $200 million in allegedly recoverable costs relating to several distinct

14    contaminants.  The United States should be allowed to put on a case, through its

15    experts, regarding the reasons why there is contamination at various locations at

16    the Site and who is responsible for it, which bears directly on the Court's equitable

17    allocation analysis.  In this regard, the Court has broad discretion to admit the

18    United States' expert testimony, which will assist the Court's factfinding on these

19    important Phase II issues.  Indeed, the Court already has heard argument on

20    AISLIC's objections to Mr. Low and indicated during Phase I that there was no

21    basis to exclude his allocation testimony.  *See* Trial Tr. Day 2 (Feb. 23[sic], 2010),

22    _____

23    [1] AISLIC's motion does not challenge the previously filed direct testimony of the
United States' other experts, including Jan Kool (Doc. 97-5), Mary Sitton (Doc.
24    97-8 ), and Jay Brigham (Doc. 97-4).  Nor did AISLIC renew its objections to
direct testimony that the United States submitted for Kathleen Anderson from the
25    Army Corps of Engineers (Doc. 97-2).  Because the deadline set forth in the
Court's November 29, 2010 minute order has passed, AISLIC has waived all
26    objections to the admissibility of those witnesses' declarations.
27

2

**UNITED STATES' OPPOSITION TO AISLIC'S MOTION IN LIMINE**

1  Vol. II, at 415 ("I can spare you some time.  Just because it's a Court issue doesn't

2  mean the Court can't receive or possibly be persuaded or influenced by expert

3  testimony.") & 417 ("But for whatever expert opinion these individuals have on

4  issues that affect criteria for determining allocation  or facts relating to allocation,

5  they're permitted to testify.").  As elaborated below, AISLIC's similar objections

6  to the testimony of Dr. McLane and Mr. Bauer are equally unfounded.

7      As the Court also recognized, the trial process allows AISLIC a fair

8  opportunity to test the strength and credibility of the United States' expert opinions

9  if it wishes to do so.  *See* Trial Tr. Day 2, Vol. II, at 420-21 ("Well, then establish

10  that on your . . . cross, ok?  And if it's a high-fallutin' bunch of smoke, I'll be able

11  to figure that out.  I'm not going to preclude it in advance based upon what you're

12  telling me now.").  Thus, AISLIC should spend the hour or so that it estimated

13  would be necessary to adequately cross-examine each of these three experts at trial.

14  See Doc.141-1, at 2 ("Joint Trial Witness Estimate Form" estimating 1.0 hour for

15  AISLIC's cross of Low, 1.25 hours for Bauer, and 1.5 hours for McLane).  At best,

16  AISLIC's arguments go to the weight, not admissibility, of the testimony.

## LEGAL STANDARDS

18      Federal Rule of Evidence 702 governs the admissibility of expert testimony.

19  Rule 702 imposes a "gatekeeping" duty on the court to ensure that testimony based

20  on scientific, technical or other specialized knowledge rests on a reliable

21  foundation and is relevant.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579

22  (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  However, "far from

23  requiring trial judges to mechanically apply the *Daubert* factors" the trial court has

24  broad discretion to determine not only whether to admit expert testimony but also

25  how to test an expert's reliability.  *United States v. Hankey*, 203 F.3d 1160, 1168

26  (9th Cir. 2000).  In a bench trial, courts have even greater discretion to relax

27

**UNITED STATES' OPPOSITION TO AISLIC'S MOTION IN LIMINE**

1    scrutiny of expert testimony.  A court may admit the challenged evidence subject

2    to the ability to later exclude or disregard it if it does not meet the standards

3    established by Rule 702.  *In re Salem,* 465 F.3d 767, 777 (7th Cir. 2006); *United*

4    *States v. Brown*, 415 F.3d 1257, 1268-69 (11th Cir. 2005).  Similarly, courts have

5    greater flexibility in a bench trial to consider expert opinions that reflect legal

6    conclusions.  *See Autoskill, Inc. v. Nat'l Educ. Support Sys.*, 994 F.2d 1476, 1493

7    (10th Cir. 1993) (discretion to admit expert testimony as the legal conclusions

8    "were not binding"); *Martin v. Ind. Mich. Power Co.*, 292 F. Supp. 2d 947, 959

9    (W.D. Mich. 2002) (dangers that legal expert testimony presents are "minimal if

10   not nonexistent" in bench trial).

11                                   **ARGUMENT**

12   **I.    <u>MR. LOW'S ALLOCATION OPINIONS ARE ADMISSIBLE.</u>**

13           Up until the eve of trial, AISLIC's took the position that allocation of

14   response costs is a proper subject for expert testimony, as demonstrated by their

15   submission of two Rule 26 reports from Robert M. Zoch covering CERCLA

16   allocation issues -- one in June 2009 and another in November 2009.  In response

17   to AISLIC, the United States retained Matthew Low to rebut Mr. Zoch's flawed

18   opinions and to offer for consideration by the Court a proposed allocation

19   framework that draws from Mr. Low's substantial CERCLA experience and

20   properly reflects the relevant facts in this case.  It was only after both Mr. Zoch and

21   Mr. Low were deposed that AISLIC changed course and argued that the Court

22   should not weigh the credibility of the parties' respective expert's allocation

23   opinions on the ground that this testimony invades the province of the Court and is

24   not reliable.  Consistent with the Court's comments after hearing these same

25   objections, Mr. Low should be allowed to testify on the subjects set forth in his

26   witness declaration.  *See* Trial Tr. Day 2, Vol. II, at 417 ("[W]hatever expert

27

                                         4

1  opinion these individuals have on issues that affect criteria for determining

2  allocation or facts relating to allocation, they're permitted to testify.").

3       Mr. Low's substantial experience will aid the Court in its determination of

4  an equitable allocation of response costs under CERCLA § 113(f).  Many courts

5  and settling parties have accepted his allocation analyses. *See also* David F. Herr,

6  Annotated Manual for Complex Litigation § 34.31 (4th ed. May 2010), at 681

7  ("The use of allocation experts has grown in CERCLA cases, and their function is

8  to assist in estimating PRP shares, taking into account volume, toxicity,

9  contribution to the cost of remediation, and similar factors.").

10       **A.  Mr. Low qualifies as an expert under Rule 702.**

11       AISLIC asks the Court to disregard Mr. Low's greater than thirty years of

12  experience as an environmental consultant and CERCLA cost allocation expert,

13  and appears to argue that only experts with credentials "in geology, hydrogeology

14  or any of the other scientific disciplines" are worth the time of the Court.  AISLIC

15  Br. (Doc. 192) at 2.  These challenges to the strength of an expert's credentials go

16  to the weight, not admissibility, of the testimony. *See McCullock v. H.S. Fuller*

17  *Co.*, 61 F.3d 1038, 1043-44 (2d Cir. 1995) (rejecting "quibble" with expert's

18  formal training).  Mr. Zoch also has no such credentials, but presumably AISLIC

19  deemed him qualified to submit two Rule 26 allocation reports. *See* AISLIC Br. at

20  6 n.3 (asserting that Zoch has a "scientific basis" for his opinions).

21       In addition, AISLIC's narrow characterization of the kind of expert that may

22  be useful to a court does not match up to the "broadly phrased" definition of an

23  expert adopted in Rule 702. *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269-

24  1270 (9th Cir. 1994) ("Rule 702 is . . . intended to embrace more than a narrow

25  definition of qualified expert.").  Mr. Low has an engineering degree and over 30

26  years of professional experience in environmental compliance, management and

27

**UNITED STATES' OPPOSITION TO AISLIC'S MOTION IN LIMINE**

enforcement, risk assessment, arbitration, mediation, dispute resolution, and policy

analysis. He is experienced in developing environmental management systems and

conducting due diligence investigations, and he was the branch chief at the United

States Environmental Protection Agency's Office of Enforcement and Policy as

well as the Policy Director for the National Commission on Air Quality. He

personally has worked on over 100 CERCLA cases. *See* Mr. Low's Declaration In

Lieu Of Direct Testimony, Doc. 97-6, at p. 44, for a copy of his résumé ("Low

Declaration"). Accordingly, Mr. Low is well qualified to address the Court on

allocation issues. *See New York v. Solvent Chem. Co.*, 685 F. Supp. 2d 357, 444

(W.D.N.Y. 2010) (acknowledging expert's "considerable experience in the field of

CERCLA liability allocation," including "work in both the private and public

sectors as a consultant, mediator, arbitrator, court-appointed expert, and privately

retained expert in Superfund cases").

### B. Mr. Low's expert testimony is reliable.

#### 1. Mr. Low's testimony is based on generally accepted methodology and incorporates a site-specific factual basis.

The language of CERCLA, its legislative history, and case law provide a

strong foundation for Mr. Low's allocation methodology. He specifically

discusses the "Gore factors," among other equitable factors, as a guide to his

analysis. This methodology is generally accepted by courts, arbitrators, and

mediators.[2] Indeed, Mr. Low relies on the same general methodology, with

_____

[2] AISLIC confuses the issue of reliability with relevance. Mr. Low considers
factors that are frequently applied in CERCLA cases and that may be used by
lawyers in briefing the court—a methodology AISLIC recognizes as valid.
AISLIC Br. at 5 ("This is a subject for argument by lawyers."). The fact the Mr.
Low's recommended methodology in this case is similar to that adopted by courts
does not make his methodology unreliable. To the contrary, it indicates his

6

necessary tailoring to reflect each specific factual situation, whether he is serving
as an expert, mediator, or environmental consultant.

Mr. Low further bases his opinions on an in-depth examination of the facts
of the case as set forth in original documents, depositions, and expert reports. *See*
Low Declaration, Attachment 1. Each hazardous waste site is distinct in the nature
and source of its contamination, as well as in the extent to which information
relevant to allocation may be available in the record. Here, Mr. Low has examined
site-specific factual information to determine which of a number of potential
metrics best fit the character of the Whittaker-Bermite Site. The Court is not being
asked to accept Mr. Low's conclusions *ipse dixit*; Mr. Low's reasoning is
presented openly such that the Court may evaluate his opinions on the merits. In
his expert reports, Mr. Low sets forth the equitable factors he considered most
relevant to the site, and the calculations and assumptions underlying those
determinations. He also describes his reasoning for weighting certain factors more
or less heavily by reference to the facts at the Site. Mr. Low further identifies
explicitly where he is relying on information from or the conclusions of other
experts. Even the *Westwood-Squibb* Court, which opted not to hear Mr. Low's
testimony, concluded Low "took great care to ground his analysis in objective
fact," that his "analysis of the site's history and operations seems rational and
considered," and that Low "supports his reading of the record by citing and
discussing specific examples and drawing on decades of experience in CERCLA
allocations." *New York v. Westwood-Squibb Pharmaceuticals, Inc.*, Civ. No. 90-

methodology is "generally accepted," one of the *Daubert* factors. The question of
relevance of the methodology is addressed *infra*.

7

CV-1324, 2001 U.S. Dist. LEXIS 11765 (June 23, 2001).[3]

Mr. Low's analysis is transparent and properly reflects the specific facts that have been developed regarding the Whittaker-Bermite Site, and thus unquestionably meets Rule 702 requirements for reliability. *See Bragdon v. Abott*, 524 U.S. 624, 653 (1998) (expert testimony is reliable where it has "a traceable, analytical basis in objective fact"). AISLIC is incorrect that the additional *Daubert* factors are useful or necessary to evaluate Mr. Low's methodology. As one court stated, "Because environmental contamination cases present unique issues of causation, the court is not concerned that [the cost allocation expert's] theory has not been tested, published or subject to peer review." *Raytheon Aircraft Co. v. United States*, Civ. No. 05-2328-JWL, 2008 WL 627458, at *6 (D. Kan. Mar. 4, 2008) (expert held reliable). Accordingly, the Court should consider Mr. Low's analysis, which is based on his demonstrated expertise in formulating large quantities of technical data and facts into allocation frameworks.

## 2. The Court need not agree with Mr. Low's ultimate conclusions to find his methodology reliable.

In addition to presenting an analytic framework for CERCLA allocation at the Whittaker-Bermite site, Mr. Low presents figures that represent his reasoned opinion of an equitable allocation between the parties. Contrary to AISLIC's suggestion, Mr. Low is not usurping the role of the Court. Rule 704(a) expressly

---

[3] *Westwood-Squibb* is of limited value because the same court more recently held -- after considering other CERCLA decisions -- that the "proper approach" was to permit CERCLCA allocation experts to testify at trial and be subject to cross-examination, given the substantial flexibility that courts have to conduct CERCLA bench trials. *See New York v. Solvent Chem. Co.*, 2006 WL 2640647, at *2 (W.D.N.Y. Sept., 14, 2006). Moreover, *Westwood-Squibb* is distinguishable in that Mr. Low's allocation analysis here is framed around the unique facts pertaining the Whittaker-Bermite Site.

8

authorizes experts, such as Mr. Low, to testify as to the ultimate issue in a case. *See Miksis v. Howard*, 106 F.3d 754, 762 (7th Cir. 1997); *Davis v. Mason County*, 927 F.2d 1473, 1484-85 (9th Cir. 1991) (superseded by statute on other grounds). Moreover, Mr. Low himself recognizes that, "decisions on which allocation factors to apply and how to apply them are within the province of the Court." Low Decl. at 6. The respective roles of the expert and the Court remain clear.

The Court ultimately may accept or disagree with Mr. Low's conclusions. The focus of a reliability assessment under Rule 702, however, "must be solely on the principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 594-95. *See also Raytheon*, 2008 WL 627488, at *6 (noting the court may not ultimately agree with the allocation expert's approach, but admitting the expert opinion as reliable). AISLIC already has taken Mr. Low's deposition and will have an adequate opportunity to cross-examine him at trial. The Court, as factfinder, may then assess Mr. Low's credibility and give his expert testimony the weight it sees fit. *See* Trial Tr. Day 2, Vol. II, at 420-21 (suggesting that AISLIC's objections to Mr. Low are more properly viewed as fodder for cross-examination).

## C. Mr. Low's testimony is relevant and will assist the Court.

Numerous federal courts have admitted the testimony of allocation experts and used them as an aid in allocating liability among PRPs under CERLCA. *See e.g., Goodrich Corp. v. Town of Middlesbury*, 311 F.3d 154, 162-64 (2d Cir. 2002) (evaluating the opinions of CERCLA allocation experts in its review of an allocation finding); *United States v. Kramer*, 644 F. Supp. 2d 479, 494 (D.N.J. 2008) (testimony of a CERCLA allocation expert "might illuminate court's consideration of equitable factors" but is not necessary to survive motion for summary judgment); *Action Mfg. Co. v. Simon Wrecking Co.*, 428 F. Supp. 2d 288, 314 (E.D. Pa. 2006) (admitting allocation expert testimony); *City of Wichita v.*

9

1   *Trs. of the Apco Oil Corp. Liquidating Trust*, 306 F. Supp. 2d 1040, 1111 (D. Kan.

2   2003) (same); *Ekotek Site PRP Comm. v. Self*, 1 F. Supp. 2d 1282, 1294 (D. Utah

3   1998) (same); *Browning-Ferris Indus. of Ill., Inc. v. Ter Maat*, 13 F. Supp. 2d 756,

4   778 (N.D. Ill. 1998) (same).  Contrary to AISLIC's position that the role allocation

5   experts play (if any) is extremely narrow, AISLIC Br. at 4, the type and range of

6   expert testimony that federal courts routinely admit in CERCLA cases actually is

7   quite broad.  *See, e.g., Goodrich Corp.*, 311 F.3d at 162 (experts presented

8   recommended cost allocation formulas, including one developed by a neutral

9   consultant, incorporating multiple factors); *Solvent Chem*, 685 F. Supp. 2d at 444-

10  54 (conducting a thorough review of an expert's allocation analysis and concluding

11  that it was consistent with the "basic equitable principle that the parties responsible

12  for creating the hazardous conditions should bear the costs of cleaning them up").

13  The Rules of Evidence clearly provide judges the flexibility to entertain such

14  expert testimony because it assists them in resolving these complex environmental

15  cases.  Moreover, contrary to AISLIC's assertion, Mr. Low's allocation reports

16  incorporate a volumetric analysis as part of assessing the relative degree of

17  involvement of Whittaker and the United States at various locations where

18  contamination is found at the Site.  Thus, Mr. Low's witness declaration falls

19  comfortably within the broad range of cases in which courts have found CERCLA

20  allocation opinions admissible.

21      AISLIC's contention that courts can never entertain expert testimony

22  relating to equitable issues or factors is untenable.  *See* AISLIC Br. at 6.  The

23  testimony does not interfere in any way with the Court's responsibility to decide

24  the case.  Rather, Mr. Low presents documented facts related to contamination at

25  the site in a light that may be helpful to the Court in organizing its own equitable

26  analysis.  The bottom line is that the Court is free to adopt or reject as much of Mr.

27

Low's proposed framework as it wishes.  As the Court recognized, providing
context to the facts in the record is a traditional role of many experts.  *See* Trial Tr.
Day 2, Vol. II, at 415 ("Just because it's a Court issue doesn't mean the Court can't
receive or possibly be persuaded or influenced by expert testimony.")

AISLIC's position also fails to take into consideration that each party has the
opportunity to present its own understanding of the best allocation framework.
Indeed, AISLIC's expert, Dr. Zoch, has offered his own cost allocation opinions.
By hearing expert testimony on cost allocation, courts have the benefit of
examining and weighing the merits of opposing allocation frameworks.  Far from
being manipulated into directly adopting an expert's proffered views on allocation
as a juror might, courts have shown themselves adept at adopting only the portions
of the allocation experts' opinions that they find persuasive.  *See, e.g., Action Mfg.
Co*, 428 F. Supp. 2d at 314 (adopting one party's CERCLA allocation expert's
approach and incorporating opposing allocation expert's objections to calculate
equitable shares); *City of Wichita*, 306 F. Supp. 2d at 1111 (D. Kan. 2003)
(comparing experts' models and using a CERCLA allocation expert's opinion in
determining which among them to use).  Moreover, these different allocation
frameworks are best presented and compared through direct and cross examination
at trial.  It is exactly this kind of direct comparison of opposing allocation
frameworks that is most helpful to courts in making the ultimate determination on
CERCLA cost allocation.

## II.    DR. McLANE'S OPINIONS ARE ADMISSIBLE.

### A. **Dr. McLane qualifies as an expert under Rule 702.**

AISLIC contends that Dr. McLane's declaration should be excluded "in its
entirety" because he allegedly is incompetent to express any opinions that do not
focus narrowly and exclusively on geology or hydrogeology.  *See* AISLIC Br. at 7-

8. The legal premise of AISLIC's assertion is fatally flawed. *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) ("experts need not have overly specialized knowledge to offer opinions"); *McCullock*, 61 F.3d at 1044 (holding that a consulting engineer was qualified as an expert in a product liability action despite defendant's "quibble" with his lack of formal training in fume dispersal or air quality studies).

In any event, AISLIC has waived any challenge to the Dr. McLane's qualifications. Without objection from AISLIC, the Court already has admitted in evidence during Phase I most of Dr. McLane's witness declaration, as well as the underlying portions of his two Rule 26 reports that support and elaborate on his expert opinions. *See* Trial Tr. Day 4 (Feb. 26, 2010), Vol. II, at 879 (offering McLane Declaration ¶¶ 1 through 5, 9 and 10, and 16 through 20) & Trial Tr. at 880 (AISLIC counsel stating that AISLIC "would stipulate that those paragraphs can be received as if [Dr. McLane] was to appear and affirm his declaration"). Nor did AISLIC choose to cross-examine Dr. McLane about his expert qualifications or the opinions set forth in the paragraphs that the Court admitted in evidence. *Id.* at 881. Thus, AISLIC's request to exclude the Declaration "in its entirety" is untenable. AISLIC should not be permitted to re-litigate these questions of admissibility in Phase II.[4]

_____

[4] When bifurcating the case, the Court presumably intended that the parties could rely on the evidence admitted during Phase I to the extent that it also is relevant to Phase II issues. Otherwise, the parties would be forced to bring back additional witnesses whose testimony was otherwise complete. In any event, AISLIC's objections to the admitted portions of Dr. McLane's testimony are meritless. *See* AISLIC Br. 8, 13-15 (challenging Paragraphs 6 and 16-19, which have been admitted and are relevant in whole or in part to allocation). The United States is not offering Dr. McLane's testimony on issues the Court has decided.

UNITED STATES' OPPOSITION TO AISLIC'S MOTION IN LIMINE

1        Moreover, AISLIC simply ignores the full extent of Dr. McLane's academic

2   training, including his doctorate in environmental science, and the vast

3   professional experience that Dr. McLane has amassed over nearly three decades in

4   the field of environmental consulting.  *See* McLane Decl., 97-7, at 2 (noting

5   experience providing management and consulting services regarding the

6   identification and assessment of sources of contamination, including prior

7   experience investigating the release and fate and transport of organic solvents and

8   perchlorate, which are present at the Whittaker-Bermite Site).  Dr. McLane's 25-

9   page *curriculum vita* is replete with examples of the corporations and government

10  agencies he has assisted in investigating and responding to hazardous waste

11  regulatory program requirements around the country.  *See* McLane Decl., Doc. 97-

12  7, at 112-37.  Dr. McLane's impressive qualifications are also evidenced  by his

13  lectures and publications on an array of topics relating in the environmental

14  sciences and site remediation, as well as the variety of prior engagements in which

15  he has served as an expert witness in toxic tort, insurance, and CERCLA litigation.

16  *Id.*  Among other things, his work has encompassed environmental assessments at

17  the Kerr-McGee Chemical plant in Nevada – the commercial supplier of

18  perchlorate to Whittaker-Bermite – as well as various other defense contractor

19  facilities and military installations.  *Id.*  In sum, Dr. McLane's training in

20  environmental science and professional experience analyzing historical industrial

21  and manufacturing processes for a broad range of clients in similar settings

22  demonstrates that he possesses the requisite expertise to opine regarding the

23  various ways contaminants were introduced into the environment at the Whittaker-

24  Bermite Site.  *See generally Metavante Corp. v. Emigrant Savings Bank*, 619 F.3d

25  748, 761 (7th Cir. 2010) (allowing expert testimony based on experience in

26  industry).  All of the opinions that Dr. McLane is offering in his written witness

27

UNITED STATES' OPPOSITION TO AISLIC'S MOTION IN LIMINE

1  declaration and accompanying Rule 26 reports fall within the scope of his broad

2  environmental expertise.

3                    **B. Dr. McLane's opinions are otherwise admissible.**

4          AISLIC's contention that Dr. McLane's declaration should be excluded as

5  "cumulative" is equally without merit.  AISLIC contends that Dr. McLane's

6  testimony is not necessary because the Court "will hear from" Whittaker

7  employees and the Court can sort through the "historical record" as well as the

8  "numerous reports created during the remedial process" on its own, and thereby

9  understand how Whittaker's practices resulted in the contamination at multiple

10  locations at the Site.  *See* AISLIC Br. 9 & n.5.  AISLIC, however, is not brining

11  any Whittaker employee to testify live at the Phase II trial, and its suggestion that

12  the Court should go it alone in a complicated CERCLA case, such as this one,

13  borders on the absurd.  The Court will benefit from the extensive compilation and

14  analysis of the facts that Dr. McLane offers regarding the four decades of

15  manufacturing operations at the Site.

16          Contrary to AISLIC's assertion, Dr. McLane's and Mr. Bauer's opinions are

17  not redundant in any substantive way.  It is apparent from reviewing the

18  declarations and the two supporting Rule 26 reports prepared by each witness that

19  Dr. McLane and Mr. Bauer draw from different areas of expertise and their

20  opinions are complementary.  Dr. McLane's declaration and Rule 26 reports draw

21  heavily on his knowledge of the fate and transport of chemicals and his review of

22  the environmental investigation and remedial documents pertaining to the Site.  He

23  focuses on the practices or processes that likely led to the contamination in specific

24  areas of the Site.  The McLane declaration also includes separate appendices

25  describing the history of environmental investigations at the Site, *see* McLane

26  Decl., Doc. 97-7, at 133-37, and geology at the Whittaker-Bermite Site, *see id.* at

27

14

138-43.  As set forth in detail in the declaration and attached reports, Dr. McLane will explain to the Court what Whittaker did and how the corporation's disposal practices impacted the environment over time.  Dr. McLane also describes how Whittaker's actions after manufacturing ceased in 1987, such as its extensive grading for commercial development, led to the migration of contaminants through the soil and in groundwater.  AISLIC's sweeping generalizations are belied by the content of McLane and Bauer declarations and reports.  Dr. McLane's testimony is distinct from Mr. Bauer's, and is not cumulative.  *See infra* (discussing Bauer).

Finally, Dr. McLane is entitled to rely on sworn deposition testimony of California Department of Toxic Substances Control employees and that agency's internal documents showing that Whittaker misled environmental regulators, leading to a criminal referral against the company regarding its environmental practices.  This is directly relevant to the issues in Phase II; it is well established that cooperation with environmental regulators is a factor that Courts commonly consider in deciding what would be an equitable allocation of response costs.  Dr. McLane's opinions, therefore, do not constitute inadmissible character evidence or a legal conclusion but are well-supported by the facts.  The Court is perfectly capable of evaluating Dr. McLane's expert testimony and giving it the proper weight, following AISLIC's cross-examination.  *See Autoskill*, 994 F.2d at 1493 (discretion to admit expert testimony, including legal conclusions where such testimony was "helpful" and the legal conclusions "were not binding").  Accordingly, the Court should deny all of the objections AISLIC has raised to Dr. McLane's declaration.

UNITED STATES' OPPOSITION TO AISLIC'S MOTION IN LIMINE

### III.    MR. BAUER'S OPINIONS ARE ADMISSIBLE.

#### A. Mr. Bauer qualifies as an expert under Rule 702.

As with Dr. McLane, AISLIC incorrectly postulates that because Mr. Bauer obtained an undergraduate degree in chemistry he is unqualified to render an opinion on any issue other than the "chemical components" present at the Site. *See* AISLIC Br. at 17. This overly narrow concept of admissibility cannot be reconciled with Rule 702 and disregards the obvious breadth of Mr. Bauer's relevant professional experience.

David Bauer is a Certified Professional Chemist, a Qualified Environmental Professional, and a California Registered Environmental Assessor II – 20203. *See* Bauer Decl., Doc. 97-3, at 40-41. For more than 30 years, Mr. Bauer has worked in the field of environmental science and hazardous waste management in California, and he has abundant experience in developing environmental compliance programs and applying the State's environmental statutes and regulations to industrial manufacturing and disposal operations. *Id.*

From 1962 to 1978, Mr. Bauer was the Environmental Control/Utilities Manager for Dow Chemical Company, Western Division, located in Pittsburg, California. While at Dow, Mr. Bauer's work required him to be knowledgeable as to the proper handling and disposal of volatile organic compounds, including the same solvents used at the Whittaker-Bermite facility. *See* Declaration of Michael Augustini In Support Of The United States' Opposition To AISLIC's Motion In Limine ("Augustini Decl."), ¶ 2 (Bauer Depo. Tr. at 18:13-25). And from 1978 to 1986, Mr. Bauer served as Vice President of Environmental Affairs at IT Corporation, Torrance, California. IT Corporation was exclusively engaged in hazardous waste management during that time, including treatment, transportation, facility cleaning, and disposal. *Id.* (Bauer Depo. Tr. at 71:12-19). At both Dow

UNITED STATES' OPPOSITION TO AISLIC'S MOTION IN LIMINE

and IT Corporation, Mr. Bauer's responsibilities included management of environmental improvements of existing facilities, environmental permitting of new and expanded production and distribution facilities, and disposal of hazardous wastes. *See id.* (Bauer Depo. at 99 (IT worked with defense contractors "all the time" on disposal issues), 101-02 (discussing his involvement in designing a burn operation for energetic materials in the late 1960s and 1970s).

In 1987, Mr. Bauer founded Targhee, Inc., a California environmental consulting firm specializing in issues involving management of hazardous materials and hazardous wastes, water quality, environmental permitting, regulatory compliance and air quality. Mr. Bauer has acquired extensive knowledge of the State's environmental statutes and regulations, he has participated in drafting State regulations, and he has served as a liaison between the State and industry on key environmental issues. Mr. Bauer was appointed to the Governor's Office of Appropriate Technology Advisory Committee on Technology of Alternatives to Land Disposal of Hazardous Waste, and to the Technical Advisory Committee for the Governor's Task Force on Toxics. He has also authored a number of publications on the subject of remediation and hazardous waste management. *See* Bauer Decl., Doc. 97-3, at 42-43.

In addition, Mr. Bauer has been retained and qualified as an expert witness on many occasions. Specifically, Mr. Bauer has testified as an expert witness in the State courts of California, Pennsylvania, New Jersey, Missouri, and Texas, and in the United States District Courts for the Central District of California, the Northern District of California, and the Western District of Pennsylvania. *See* Doc. 97-3 at 44-46. In many of those matters, Mr. Bauer testified as to the appropriate standard of care to which an entity should be held in connection with the disposal or maintenance of hazardous waste. Augustini Decl. ¶ 2 (Bauer Depo.

**UNITED STATES' OPPOSITION TO AISLIC'S MOTION IN LIMINE**

1  Tr. at 117:25-119:4).  And as he noted at his deposition, Mr. Bauer also has prior

2  experience analyzing whether and how manufacturing operations can contribute to

3  perchlorate contamination in groundwater, serving as an expert in a matter

4  involving an industrial facility in Morgan Hill, California.  *Id.*  In sum, Mr. Bauer's

5  broad professional experience in the proper handling and disposal of hazardous

6  waste in California qualifies him to testify as an expert in this matter.

7      **B. Mr. Bauer's testimony is highly relevant and will assist the**
          **Court.**
8

9      AISLIC also seeks to exclude Mr. Bauer's opinions that Whittaker failed to

10  meet the appropriate standard of care for handling and disposing of waste at the

11  Site, arguing that those are "issues of law."  *See* AISLIC Br. at 18.  AISLIC's

12  objection is misdirected.  Expert testimony on compliance with industry standards

13  is "common fare in civil litigation."  *See Levin v. Dalva Bros., Inc.*, 459 F.3d 68,

14  79 (1st Cir. 2006) (citing cases); *see also Vucinich v. Paine, Webber, Jackson &*

15  *Curtis, Inc.*, 803 F.2d 454, 461 (9th Cir.1986) (holding that district court erred in

16  excluding expert testimony regarding the rules of the New York Stock Exchange

17  as those reflect industry standards); *Ling Nan Zheng v. Liberty Apparel Co.*, 556

18  F.Supp. 2d 284, 292-93 (S.D.N.Y. 2008) (allowing expert testimony on industry

19  custom and historical practices).  Environmental statutes and regulations inform

20  Mr. Bauer's understanding of industry standards, as they must, but that does not

21  transform Mr. Bauer's testimony regarding Whittaker's practices into

22  impermissible "legal" opinions.  As noted above, Mr. Bauer has more than thirty

23  years of practical experience in dealing with the hazardous waste laws and

24  regulations in California, and thus this is not a valid basis to exclude his opinions.

25      The Court should also reject AISLIC's assertion that Mr. Bauer's opinions

26  are "duplicative" of Dr. McLane's testimony.  AISLIC's superficial analysis shows

27

**UNITED STATES' OPPOSITION TO AISLIC'S MOTION IN LIMINE**

little more than that both experts are examining Whittaker's practices at the Site, as all of AISLIC's experts are doing. A careful examination of both the declarations and the supporting Rule 26 reports of each witness reveals that Mr. Bauer is drawing from different areas of expertise and rendering different substantive opinions. Unlike Dr. McLane, Mr. Bauer is focusing on the appropriate standard of care that a defense contractor, such as Whittaker, should have followed based on the prevailing knowledge of site conditions, applicable statutory and regulatory requirements, plant rules and operating procedures, and other applicable factors. Mr. Bauer also addresses the requirements of California's Dickey Act, which applied for almost the entire time Whitaker-Bermite was operating at the Site, and the orders that the California State Water Pollution Control Board issued to Aerojet General Corporation, another manufacturer of rocket engines and propellants in California, neither of which are the subject Dr. McLane's testimony. Mr. Bauer further provides his unique understanding of Whittaker's industrial waste disposal permits from Los Angeles County, and opines that Whittaker did not obtain all of necessary state and local permits necessary to dispose of its waste in the manner it did at the Site. The claim – *see* AISLIC Br. at 19 – that Mr. Bauer and Dr. McLane are presenting the "same testimony" simply is not correct. Moreover, Mr. Bauer's testimony is highly probative on the main issue before the Court in Phase II: who should bear the costs of addressing the contamination that resulted from Whittaker's historical operations at the Site. Accordingly, the Court should deny all of AISLIC's objections to Mr. Bauer's expert witness declaration.

## IV.  THE COURT OVERRULED AISLIC'S "OMNIBUS" HEARSAY OBJECTION TO THE ADMISSION OF THE UNITED STATES' EXPERT REPORTS.

During the Phase I trial, the Court rejected AISLIC's "omnibus" hearsay objection to the admission of the Rule 26 expert reports attached to the United

UNITED STATES' OPPOSITION TO AISLIC'S MOTION IN LIMINE

States' sworn witness declarations. *See* Trial Tr. Day 4, Vol. I, at 758 (overruling AISLIC's objections to Brigham), Trial Day 4, Vol. II, at 825 (confirming the Court's ruling that both the expert declaration and attached Rule 26 reports are admitted). Although it repeats the objection, AISLIC "concedes that the Court's prior ruling appears applicable here as well." AISLIC Br. (Doc. 192) at 26, lines 1-2. AISLIC is correct. The Court should again overrule its objection.

The Court's July 15, 2009 Scheduling and Case Management Order states that: "[a]n expert witness' direct testimony shall consist of a non-exhaustive description of his background and the contents of his Rule 26 report." *See* Case No. 06-4686, Scheduling and Case Management Order at 11, Section C(1) (Docket No. 46). By attaching their Rule 26 expert reports to the declarations the experts filed in lieu of direct testimony, the United States simply complied with this Court's Case Management Order. Moreover, the Rule 26 reports attached to and referenced by the United States' experts in their declarations are not inadmissible hearsay. By following this Court's order, the United States' expert witnesses incorporated the contents of those reports into their sworn declarations, made under penalty of perjury. Accordingly, the reports themselves became in-court sworn statements. In any event, as was the case during Phase I, the United States' experts are prepared to swear at trial that the contents of their reports are true and correct. *See Irise v. Axure Software Solutions, Inc.*, 2009 WL 3615075, CV 08-03601 SJO (JWJx), at *11 n.5 (C.D. Cal. Sep. 11, 2009) (finding a reply declaration in which expert swore the truth of the contents of his report adequately cured any potential hearsay defect in a declaration referencing those reports). AISLIC's hearsay objections should thus be overruled, and the United States' experts should be allowed to testify in accordance with their witness declarations and Rule 26 reports, as provided in the Case Management Order.

20

1

## V.    <u>CONCLUSION</u>

2    For the above reasons, the United States respectfully requests that the Court

3    deny AISLIC's motion in limine in its entirety.  The Court should allow the United

4    States' experts witnesses to testify at the Phase II trial.  The Court can then

5    determine what weight to give this testimony, following cross-examination and re-

6    direct at the bench trial.

7                            Respectfully submitted,

8                            IGNACIA S. MORENO

9                            Assistant Attorney General

10

11    Dated:    January 14, 2011

12                            MICHAEL C. AUGUSTINI

13                            MEREDITH WEINBERG

13                            MARTHA C. MANN

14                            ADAM J. KATZ

15                            Attorneys for Defendant United States

16

17

18

19

20

21

22

23

24

25

26

27

**UNITED STATES' OPPOSITION TO AISLIC'S MOTION IN LIMINE**