LAURENCE F. JANSSEN (SBN 147471)
MICHAEL R. HEIMBOLD (SBN 173981)
KIRSTEN HICKS SPIRA (SBN 119885)
STEPTOE & JOHNSON LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067-5052
Telephone: (310) 734-3200//Facsimile: (310) 734-3300
Email: ljanssen@steptoe.com
Email: mheimbold@steptoe.com
Email: kspira@steptoe.com

WILLIAM T. HASSLER (*admitted pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington D.C. 20036
Telephone: (202) 429-6469 // Facsimile: (202) 429-3902
Email: whassler@steptoe.com

FLOYD PERRY BIENSTOCK (*admitted pro hac vice*)
STEPTOE & JOHNSON LLP
201 East Washington St.
Phoenix, Arizona 85004
Telephone: (602) 257-5200 // Facsimile: (602) 257-5299
Email: fbienstock@steptoe.com

Attorneys for Plaintiff AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No.: CV 09-01734 AHM (RZx)<br><br>**AISLIC'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE, IN WHOLE OR IN PART, THE TESTIMONY OF: (1) MATTHEW LOW, (2) CHARLES R. MCLANE III, AND (3) DAVID L. BAUER**<br><br>Assigned to the Hon. A. Howard Matz Courtroom No. 14<br><br>Date: February 7, 2011<br>Time: 10:00 a.m.<br>Place: Courtroom No. 14 |

# INTRODUCTION

During Phase 1 of this case, the Court expressed disappointment with expert testimony presented that lacked balance and that consisted of little more than a cataloging of factual testimony.[1] The Government's Opposition To AISLIC's Motion In Limine ("Opp."), however, seeks to continue the same approach that disappointed the Court during Phase I. The Opposition seeks to allow the admission of testimony that is not expert opinion at all, but is rather (1) essentially lawyer argument concerning the subjective application of equitable allocation factors; or (2) rote repetition of factual statements contained in historical documents, deposition transcripts and other proposed exhibits (some of which themselves are blatantly inadmissible).

None of the challenged testimony will significantly assist the Court's decision-making process in resolving the issues remaining in this case. To the extent the testimony is relevant at all, it can be better and more efficiently addressed by counsel as part of structured oral argument rather than under the pretext of genuine expert testimony. If admitted, the challenged testimony will needlessly waste the time and resources of the Court and parties.

Nevertheless, should the Court determine that some or all of the opinion testimony should be admitted in light of the fact that the current case will be heard as a bench trial, AISLIC is prepared to cross-examine the witnesses to reveal the flaws and inadequacies of their opinions at trial.

**I.  LOW'S PROPOSED "TESTIMONY" IS LARGELY ARGUMENT MASQUERADING AS EXPERT OPINION.**

The Government first asserts that this Court has already concluded that it will allow Low's allocation testimony. Opp. at 2-3. This is not correct. The first

---

[1] *See, e.g.,* Excerpts from Trial Tr., Day 5 (Mar. 2, 2010), Vol. 2, attached hereto as Exhibit A, at 1104:22-1105:14 and 1107:6-23.

1

AISLIC'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE, IN WHOLE OR IN PART, THE TESTIMONY OF: (1) MATTHEW LOW, (2) CHARLES R. MCLANE III, AND (3) DAVID L. BAUER

quotation cited by the Government – to page 415 of the transcript – refers to the Court's statements about Mr. *Zoch's* testimony – not Mr. Low's (as the Government's brief incorrectly implies).[2] The Court stated in the same exchange that allocation testimony that asks for a legal opinion is "totally outside the proper scope of inquiry." *See* Excerpts from Trial Tr., Day 2 (Feb. 23 [sic], 2010), Vol. 2, attached hereto as Exhibit B, at 416:23-25.  Although the Court certainly suggested during the colloquy regarding Low that one way to address alleged deficiencies in Low's Declaration was through cross-examination, the Court ultimately elected to defer decisions on all allocation issues in light of its decision to bifurcate the case. It made no final decision on Low or any other allocation witness. *Id.* at 425:17-426:7.

The Government next focuses a substantial portion of its Opposition on the argument that Mr. Low is qualified to render an opinion on an equitable allocation at the Site. But AISLIC does not challenge the expertise of Low, an attorney, on this essentially legal issue. Rather, AISLIC asserts that Low's testimony is simply lawyer argument that could be as effectively – and more efficiently – handled by counsel for the Government.

The Government also argues that AISLIC takes the position that expert testimony regarding allocation is *never* proper. Opp. at 9-10.  This argument misstates AISLIC's position. AISLIC acknowledges that objective testimony regarding facts and opinions relevant to determining the existence and nature of an allocation factor may be useful and admissible in the proper case.[3]  Here, however,

---

[2] *See* Trial Tr., Day 2 (Feb. 23[sic], 2010), Vol. 2, attached hereto as Exhibit B, at 415:12-15 (Court's response to argument by Mr. Augustini).

[3] For example, expert testimony concerning the relative volume or relative toxicity of contaminants contributed by each party at the Site could be a proper use of expert testimony regarding allocation.

AISLIC'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE, IN WHOLE OR IN PART, THE TESTIMONY OF: (1) MATTHEW LOW, (2) CHARLES R. MCLANE III, AND (3) DAVID L. BAUER

the core of Mr. Low's testimony is found in two one-page charts that quantify Low's subjective views regarding how he would allocate liability in this case. *See* Excerpts from Expert Report of Matthew Low appended to and filed with Declaration of Matthew Low, attached hereto as Exhibit C, at 95 of 104, and 101 of 104 (Allocation Framework Charts). While the form of these charts may provide a useful framework as to how to quantify allocation in this case, the actual numbers used by Low are purely subjective and undoubtedly more influenced by which party hired him than by any scientific, objective standard.

The essentially legal nature of Mr. Low's opinions are clearly illustrated by his views of the "progress payment" provisions in the United States Government contracts that Whittaker worked under. Low in his deposition made clear that his opinions in this case include the legal opinion that the progress payment provision does *not* vest title in the waste at issue.[4] The Court, of course, held that the opposite was the case. *See* Excerpts from Findings of Fact and Conclusions of Law (Liability Phase; Post-Trial), attached hereto as Exhibit E, Nos. 52-53, p. 10. In any event, "testimony" regarding the legal meaning of either the progress payment provision or the legal weight to be given to equitable factors is of no value to the Court; argument by counsel representing the two parties should more than suffice.

Similarly, Low's conclusions regarding the "economic benefit" that AISLIC and the United States each accrued as the result of the operation of the Santa Clarita plant exhibit a lack of any objective methodology. "Economic benefit," of course is a valid allocation factor (a fact that neither side disputes). Low, however, summarily concludes that the United States received **<u>zero</u>** economic benefit from its purchase of rocket motors from Whittaker (or from Whittaker's agreement to

---

[4] *See* Excerpts from Deposition of Matthew Low, attached hereto as Exhibit D, at 170:7-175:17.

3

AISLIC'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE, IN WHOLE OR IN PART, THE TESTIMONY OF: (1) MATTHEW LOW, (2) CHARLES R. MCLANE III, AND (3) DAVID L. BAUER

"refurbish" – i.e., hog out – used rocket motors that the government wished to restore). *See* Excerpts from Expert Report of Matthew Low appended to and filed with Declaration of Matthew Low, attached hereto as Exhibit C, at 101 of 104 (Allocation Framework Chart, at Column 12 showing "economic benefit" factor allocated 100% to Whittaker and 0% to the United States at all areas). This conclusion is nothing more than pure advocacy; it has absolutely no expert basis in either law or economics, and is a classic example of the practices that the Court criticized in Phase I.[5] It should be clear that the Government in fact received economic benefit from the receipt of 25,000 rocket motors under the relevant government contracts, for which the government paid over $50 million. Under any neutral analysis, the economic benefit to the Government would at least be equal to the value of the rocket motors that it received.[6]

        Finally with respect to Mr. Low, even if some of Low's opinions are grounded in objective fact,[7] that alone does not make the opinion reliable when the opinion involves the subjective application of those facts to arrive at an equitable allocation. In fact, in *New York v. Westwood-Squibb Pharmaceutical Co., Inc.,* 2001 US Dist. Lexis 11765 *27 (W.D.N.Y. June 23, 2001), the Court

---

[5] *See* Excerpts from Trial Tr., Day 5 (Mar. 2, 2010), Vol. 2, attached hereto as Exhibit A, at 1107:6-23 (criticizing both parties' tendency to use expert testimony that lacked balance).

[6] Similarly, Mr. Low concedes (in agreeing with Mr. Zoch) that application of certain other allocation factors (care, cooperation and benefits) "generally are subjective." *See* Excerpts from Expert Report of Matthew Low appended to and filed with Declaration of Matthew Low, attached hereto as Exhibit C, at 28 of 104.

[7] AISLIC does not object, for example, to the soil volumes reflected in the Allocation Framework Charts [95 of 104, and 101 of 104] of Low's Expert Report that are labeled "Contaminant Contribution," since these calculations are largely based on objective figures obtained from independent studies conducted at the site. AISLIC reserves its right, however, to contest certain aspects of Low's calculations based on this data. *See id.* at 95 of 104, and 101 of 104.

1 acknowledged that Low's equitable allocation opinion was grounded in objective
2 fact, yet the Court still excluded that opinion because it concerned subjective
3 determinations of equitable issues that are properly addressed by the Court.[8]

4 This Court should do the same here if it wishes to have the parties address
5 the matters at issue in Phase II in an efficient and intellectually honest manner.

6 **II.   DR. MCLANE'S TESTIMONY SHOULD BE EXCLUDED TO THE**
7 **EXTENT IT (1) IS NOTHING MORE THAN ROTE REPETITION**
8 **OF FACTUAL EVIDENCE OF WHICH HE HAS NO FIRST HAND**
9 **KNOWLEDGE; (2) IS CUMULATIVE OF BAUER'S TESTIMONY;**
10 **OR (3) CONCERNS AREAS FOR WHICH HE IS NOT QUALIFIED.**

11 Remarkably, the Government opens its discussion of Dr. McLane's
12 testimony by defending statements found in paragraphs 16-19 of his Declaration.
13 *See* Opp. at 12 n.4. The paragraphs in question, however, contain opinions that the
14 Court has already heard (which the Government notes) and that the Court has
15 already rejected as unconvincing (which the Government fails to note).

---

[8] The Government cites to *New York v. Solvent Chemical Co.*, No. 83-CV-1401C, 2006 WL 2640647 (W.D.N.Y. Sept. 14, 2006) arguing that the *Westwood-Squibb* Court must have changed its opinion regarding the admissibility of such testimony, because it later allowed allocation testimony from a different expert, at a different site in a different case. Contrary to the Government's implication, there is no reason to believe that the Court articulated a new standard in *Solvent Chemical* and that it would therefore allow Mr. Low's testimony if presented with it again. In fact, another Court when presented with both opinions recognized that the standards for guarding against the admissibility of unreliable expert testimony may be more relaxed in a bench trial, but relied on *Westwood-Squibb* in excluding a proposed expert's opinion regarding a cost allocation based on the Gore factors because it invaded the province of the Court in arriving at an equitable allocation. *Chitayat v. Vanderbilt Assoc.,* No. 03-5314 (DRH)(MLO), 2007 WL 2890248, *2, 6 (E.D.N.Y. Sept. 27, 2007).

5

AISLIC'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE, IN WHOLE OR IN PART, THE TESTIMONY OF: (1) MATTHEW LOW, (2) CHARLES R. MCLANE III, AND (3) DAVID L. BAUER

For example, in Paragraph 16 of his Declaration, McLane opines that "there is no evidence that a release of hazardous substances occurred from U.S. Government-owned equipment at the Site." *See* Declaration of Charles R. McLane, III, attached hereto as Exhibit F, at ¶ 16. This testimony was offered in Phase I, and the Court has already made extensive conclusive findings of fact in which it *rejected* McLane's opinions regarding the ownership of equipment. *See, e.g.*, Excerpts from Findings of Fact and Conclusions of Law (Liability Phase; Post-Trial), attached hereto as Exhibit E, at Nos. 86-116, pp. 15-19.[9] There is no reason for the Court to hear again testimony on which it has already ruled.

Similarly nonsensical is the Government's argument that AISLIC has somehow "waived" its right to challenge Dr. McLane's credentials with respect to the *allocation* testimony now at issue because it did not challenge his credentials to testify regarding *liability* issues in Phase I. *See* Opp. at 12. The Court made clear in its bifurcation ruling that it wanted only to hear testimony on liability issues during Phase I; any attempt by AISLIC to try to question McLane about his qualifications to provide the testimony specifically reserved for Phase II would have frustrated the Court's purpose for bifurcation and rightly would have been rejected by the Court. The Government's attempt to prevent AISLIC from cross-examining McLane during Phase II on his Phase II credentials seeks to take advantage of the Court's bifurcation ruling in a way completely inconsistent with the Court's management of the case, and should be flatly rejected.

The Government also argues that McLane is qualified to render the opinions at issue because experts need not have overly specialized knowledge to offer

---

[9] Paragraphs 17, 18 and 19 similarly contain Dr. McLane's opinions that there was little or no Government equipment at the Site, and little or no evidence of releases from Government-owned equipment. The Court, of course, has already found to the contrary. *See* Declaration of Charles R. McLane, III, attached hereto as Exhibit F.

6

AISLIC'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE, IN WHOLE OR IN PART, THE TESTIMONY OF: (1) MATTHEW LOW, (2) CHARLES R. MCLANE III, AND (3) DAVID L. BAUER

1  opinions. However, it is clear that the offered testimony must *relate* to the area of
2  expertise. For example, using the case cited by the Government, while an engineer
3  with specific industrial work place experience designing ventilation systems is
4  qualified to opine on the air dispersal of contaminants, that same expert is not
5  qualified to opine regarding the adequacy of the company's product warning.
6  *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1041 (2d Cir. 1995). Here, there is no
7  relationship between McLane's expertise as a hydrogeologist and his opinions
8  regarding the standard of care for operating a manufacturing facility.

9  The Government further argues that, even though McLane did not have
10 formal training or education regarding the standard of care for industrial
11 manufacturing operations, he did have substantial experience working in this area.
12 However, the Government's Opposition brief cites only to unrelated experience
13 that McLane has concerning the fate and transport of contaminants, hazardous
14 waste program requirements, site remediation and environmental assessments. *See*
15 Opp. at 13.  The Government does not cite to any experience that McLane has
16 regarding the standard of care for manufacturing processes. Because the
17 Government has not cited to any experience or training that McLane has regarding
18 standard of care, he is not qualified to provide expert testimony on that topic.

19 Similarly, Dr. McLane's area of expertise has no relation to his opinion that
20 Whittaker "misled" environmental regulators (a claim which Whittaker strongly
21 disputes).  *See* Declaration of Charles R. McLane III, attached hereto as Exhibit F,
22 at ¶ 15.  Cooperation with regulators of course is a relevant issue with respect to
23 allocation, and whether regulators in fact were misled is a proper subject of inquiry
24 in the next phase.  Dr. McLane, however, has no particular expertise in assessing
25 such cooperation; his proposed testimony simply repeats by rote what other
26 witnesses or potential witnesses (including witnesses whose testimony is not
27 admissible) have said.
28

1   This is not a proper use of expert testimony. As a leading treatise on federal procedure states, although an expert under the proper conditions may rely on hearsay to form an opinion, "Rule 703 does not authorize admitting hearsay on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than transmitting them to the jury. In such a case, Rule 703 is simply inapplicable and the usual rules regulating the admissibility of evidence control." 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence § 6273 (citations omitted); *accord, U.S. v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) ("The expert may not, however, simply transmit that hearsay to the jury . . . . Otherwise, the expert is simply 'repeating hearsay evidence without applying any expertise whatsoever,' a practice that allows the Government 'to circumvent the rules prohibiting hearsay'").[10]

With regard to the issue of whether McLane's testimony is cumulative, the Government admits that both McLane and Bauer testify regarding the standard of care. However, the Government asserts that McLane's testimony is not cumulative of Bauer's because the testimony of the two is distinct and because the two witnesses "draw from different areas of expertise." The duplicative nature of the two opinions is set forth in detail in charts on pages 11-16 and 20-25 of AISLIC's Motion in Limine regarding Low, McLane and Bauer. In addition, the fact that the experts have different backgrounds does not render the opinions non-duplicative. If such were the case, then the same opinions from multiple experts would never be considered duplicative because no two experts' backgrounds will ever be exactly the same.

---

[10] As discussed above, the Court itself noted during Phase I that this Court is capable of reviewing the documentary and transcript evidence, and that such testimony from an expert is not helpful. *See* Excerpts from Trial Tr., Day 5 (Mar. 2, 2010), Vol. 2, attached hereto as Exhibit A, at 1104:22-1105:3.

8

AISLIC'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE, IN WHOLE OR IN PART, THE TESTIMONY OF: (1) MATTHEW LOW, (2) CHARLES R. MCLANE III, AND (3) DAVID L. BAUER

### III. BAUER'S TESTIMONY SHOULD BE EXCLUDED TO THE EXTENT IT (1) MERELY REPEATS FACTUAL EVIDENCE OFFERED BY OTHER SOURCES; OR (2) IS CUMULATIVE OF MCLANE'S TESTIMONY.

Like Dr. McLane, Mr. Bauer offers testimony whose main point is to repeat statements contained in testimony of other witnesses or potential witnesses, including statements that are not admissible. For example, one of Bauer's "opinions" states that the DTSC "recommended criminal charges against Whittaker for failure to disclose disposal activities at the site." *See* Declaration of David L. Bauer, attached hereto as Exhibit G, at ¶ 8. In fact, it is not disputed by the United States that *no criminal charges were ever brought* against Whittaker—much less proven. Bauer, however, chooses to repeat the allegations made in inadmissible documents with the obvious purpose of introducing through the "back door" of expert testimony evidence that has not been admitted by the Court and that will not be admitted. As noted regarding McLane's proposed testimony of a similar nature, Rule 703 does not allow such sleight of hand. *See, e.g., Mejia*, 545 F.3d at 197 ("The expert may not, however, simply transmit that hearsay to the jury . . . . Otherwise, the expert is simply 'repeating hearsay evidence without applying any expertise whatsoever,' a practice that allows the Government 'to circumvent the rules prohibiting hearsay'").

Similarly, Bauer's "opinions" that Whittaker "willfully ignored" environmental problems or that the company engaged in "deliberate dumping of waste" are loaded with argumentative phrasings, not any genuine expertise that would assist the Court's decision-making. All of his argumentative opinions are hotly contested by AISLIC, and will be the subject of extensive cross-examination

9

AISLIC'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE, IN WHOLE OR IN PART, THE TESTIMONY OF: (1) MATTHEW LOW, (2) CHARLES R. MCLANE III, AND (3) DAVID L. BAUER

if allowed.  The Court has already made clear that such testimony is of little value.  The testimony should be excluded.[11]

Finally, the Government argues, as it did regarding McLane, that Bauer's testimony is not duplicative of McLane's because the two opinions are different and because the two experts are "drawing from different areas of expertise." However, as explained above in answering the same argument regarding McLane, the duplicative nature of the two opinions is set forth in AISLIC's Motion in Limine, and the differing backgrounds of experts does not render duplicative opinions non-duplicative.

## IV. CONCLUSION

Based on the foregoing, AISLIC respectfully requests that this Court order stricken the appropriate portions of the expert Declarations of Low, McLane, and Bauer.

Dated: January 24, 2011

STEPTOE & JOHNSON LLP

WILLIAM T. HASSLER
FLOYD PERRY BIENSTOCK
LAURENCE F. JANSSEN
MICHAEL R. HEIMBOLD
KIRSTEN HICKS SPIRA

By: /s/ Kirsten Hicks Spira
        KIRSTEN HICKS SPIRA
Attorneys for Intervenor/Plaintiff
AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY

---

[11] *See* Excerpts from Trial Tr., Day 5 (Mar. 2, 2010), Vol. 2, attached hereto as Exhibit A, at 1104:22-1105:3.

10

AISLIC'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE, IN WHOLE OR IN PART, THE TESTIMONY OF: (1) MATTHEW LOW, (2) CHARLES R. MCLANE III, AND (3) DAVID L. BAUER